UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TODD JEFFREY STEIN and | ) | CASE NO. 15-02366-JJG-7 |
| CATHERINE WALSH STEIN, | ) | |
| | ) | |
| DEBTORS. | ) | |
| _____ | ) | |
| ELLIOTT D. LEVIN, TRUSTEE FOR | ) | |
| THE BANKRUPTCY ESTATE OF | ) | |
| TODD JEFFREY STEIN and | ) | |
| CATHERINE WALSH STEIN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | ADVERSARY PROCEEDING |
| | ) | NO. |
| TODD JEFFREY STEIN and | ) | |
| CATHERINE WALSH STEIN, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT TO DENY DISCHARGE

Elliott D. Levin, Trustee for the bankruptcy estate of Todd Jeffrey Stein and Catherine Walsh Stein (the "Trustee"), by counsel, for his Complaint to Deny Discharge against debtors Todd Jeffrey Stein ("Todd Stein") and Catherine Walsh Stein ("Catherine Stein," and together with Todd Stein "Debtors"), states as follows:

### JURISDICTION AND VENUE

1.  Debtors filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on March 25, 2015 (the "Petition Date").

2.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and § 727 of the Bankruptcy Code. This matter is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2)(J).  This matter is properly brought as an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3. Venue is appropriate in this district pursuant to 28 U.S.C. § 1409.

4. Pursuant to S.D. Ind. B-7008-1, the Trustee consents to the entry of final orders and judgments by the Bankruptcy Judge.  This Court has jurisdiction to enter final orders in this adversary proceeding regardless of the parties' consent.

**SUMMARY OF FACTS RELEVANT TO OBJECTIONS**

5. Todd Stein manages commercial real estate in partnership with Kevin Paige ("Paige"), a relationship dating back 18 years.  Their business ventures include the following:

6. On or about December 2, 1998, Todd Stein and Paige formed an Indiana limited liability company known as TK Commercial, LLC ("TK Commercial"), with respect to which Todd Stein and Paige held equal, 50 percent interests.  TK Commercial bought and sold residential real estate and invested in commercial real estate.

7. On or about August 25, 2009, Todd Stein and Paige formed an Indiana limited liability company known as Raiders Investments, LLC ("Raiders"), with respect to which Todd Stein and Paige held equal, 50 percent interests. At the time Raiders was formed, Todd Stein and Paige transferred to Raiders certain real estate assets that previously had been owned by TK Commercial.  On or about April 27, 2011, Todd Stein and Paige formed an Indiana Limited liability company known as 1727 Country Club, LLC ("Country Club"), with respect to which Todd Stein and Paige held equal, 50 percent equity interests.  At the time Country Club was formed, Todd Stein and Paige transferred to Country Club certain real estate assets that previously had been held by TK Commercial.

8.      On or about April 19, 2013, Todd Stein and Paige formed an Indiana limited liability company known as 16535 Southpark, LLC ("Southpark"), with respect to which Todd Stein and Paige held equal, 50 percent ownership interests. At the time Southpark was formed, Todd Stein and Paige transferred to Southpark certain real estate assets that previously had been owned by TK Commercial.

9.      On information and belief, on or about December 11, 2013, Todd Stein and Paige formed an Indiana limited liability company known as 2150 Marble Cliff, LLC ("Marble Cliff"), whose sole asset consisted of real estate purchased with proceeds from the 2013 sale of real estate that had been owned by another limited liability company (Franklin Gables, LLC, "Franklin Gables") which was owned by Todd Stein and Paige as equal, 50 percent owners.

**A.  Transfers to Paige**

10.     Before the Debtors experienced financial difficulty, Paige and Todd Stein were always "partners" who owned 50-50 interests in the business entities in which they both held ownership interests.  To this day, Todd Stein and Paige both work in the office together earning the same income from Raiders as a "management company," although Todd Stein does the "bulk of the accounting work."  They make joint decisions, and in Todd Stein's words they "are of like mind."  In fact, "now going on 18 years together, [he and Paige] do not disagree."  When asked at his Bankruptcy Rule 2004 examination (the "2004 Exam") whether he and Paige ever disagreed, Todd Stein bluntly stated that "[i]t didn't happen."

11.     Up until July 1, 2014, Todd Stein and Paige each held equal, 50 percent ownership interests in Raiders, Country Club and Southpark, and on information and belief, also continued to hold equal, 50 percent interests in TK Commercial, though the entity was no longer active.  On July 1, 2014, Todd Stein and Paige executed three virtually identical documents

3

reflecting that Todd Stein transferred one percent interests each in Raiders, Country Club and Southpark to Paige in exchange for payment by Paige of $500 for each one percent interest transferred.

12. In contrast to the prior recordkeeping practices by Todd Stein whereby signed operating agreements for entities in which Todd Stein held an interest frequently did not exist, the three "Agreement for Transfer of Interest" documents prepared to effect these transfers were prepared by outside counsel and reflect an express intention to transfer the interests to Paige. At his 2004 Exam, Todd Stein acknowledged that having signed copies of operating agreements "[h]asn't been necessary til now." In fact Todd Stein acknowledges that he and Paige have never had a formal member meeting or recorded minutes of their management decisions.

13. On information and belief, the purpose of the transfers was to ensure that Paige would own a majority, controlling interest in these entities so that creditors or a trustee in bankruptcy could not reach a controlling interest in the companies when Todd Stein filed a bankruptcy petition. Todd Stein claimed in the 2004 Exam that the reason for the transfers of the one percent interests was that he "needed the money," although the sum was inconsequential in relation to the Debtors' debts and living expenses. According to Todd Stein, to arrive at the $500 value for each of the one percent interests transferred, Todd Stein claimed that he "took the equity and subtracted out the corporate debts, multiplied by 1 percent." No explanation was offered for why the values were identical for each entity, nor for the failure to reflect any value for fact that the transfers ostensibly gave Paige majority, controlling interests in these entities.

14. Transfer of a one percent interest in Marble Cliff to Paige was accomplished in a slightly different manner. According to Todd Stein's testimony at this 2004 Exam, Marble Cliff was established with Paige holding a majority ownership interest from the outset; Todd Stein

produced to the Trustee an Operating Agreement for Marble Cliff dated December 11, 2013. That document indeed reflects that, contrary to prior practice where Todd Stein and Paige were "50/50" members, Paige held a 51 percent interest in Marble Cliff, and Todd Stein held a 49 percent interest.  However, there was no rational reason for unequal interests because both partners made equal capital investments.  Specifically, Marble Cliff was capitalized with the sales proceeds from real estate owned by the Frank Gables, LLC entity owned by Todd Stein and Paige as equal partners, which was used to purchase real estate in the name of the new entity, Marble Cliff.  Although this particular "transfer" of a one percent interest occurred more than one year prior to the Petition Date, it is nonetheless evidence of the concerted effort by Todd Stein to transfer and encumber assets to avoid creditors before filing his bankruptcy petition.

15.    The Trustee has filed a Complaint against Paige to avoid and recover the transfers of the interests in Raiders, Country Club, Southpark and Marble Cliff as fraudulent transfers pursuant to section 548 of the Bankruptcy Code and the Indiana Uniform Fraudulent Transfer Act by virtue of section 544(b) of the Bankruptcy Code, docketed as Adversary Proceeding No. 16-50215.

**B. Debtors' Financial Difficulty**

16.    The fraudulent transfers described above, as well as additional fraudulent transfers set forth in this Complaint were motivated in large part by financial problems and actions taken by creditors against the Debtors beginning in approximately mid-2012.

17.    In this regard, the Debtors had other business interests apart from Todd Stein's partnership with Paige which contributed to such problems.  In particular, the Debtors were the sole shareholders in CTS Services, Inc. ("CTS"), a company that owned and operated real estate in Kentucky, Florida and Louisiana.  On information and belief, approximately two or three

5

years prior to the Petition Date, Catherine Stein gave up her interest in CTS, and Todd Stein was the sole shareholder.

18. By mid-2012, CTS was experiencing serious financial difficulties, of which Debtors were well aware because they had guaranteed loans from American Founders Bank to CTS in the approximate total sum of $5,985,550.92. In July 2012 American Founders filed suit against CTS in Kentucky to recover on defaulted notes and to foreclose a mortgage on real estate. After a sale of the mortgaged real estate, the deficiency was approximately $3 million. Next, American Founders filed suit in Indiana against the Debtors to recover the deficiency on March 21, 2014. Debtors filed their petition in bankruptcy the day before a hearing on a motion for summary judgment filed by American Founders Bank in the case.

19. In addition, Todd Stein had also guaranteed loans from Regions Bank to CTS in the total sum of approximately $1.6 million. On September 30, 2014, Regions Bank filed suit in Florida to foreclose a mortgage on real estate pledged by CTS to secure the indebtedness.

20. Large expenses associated with the education and lifestyle maintenance of the Debtors' three adult children are also pertinent to the Debtors' financial difficulties, along with a number of transfers made to or for the benefit of those children. On the Petition Date, the Debtors estimated monthly losses of $7,800.00, primarily attributable to paying college tuition and living expenses for their children. Two children attended Georgia Tech, one of which has since graduated. The other child attended Purdue University on a partial scholarship which paid tuition, but the Debtors paid for their daughter's living expenses.

21. Prior to their bankruptcy filing, the Debtors had substantial equity in their residence. However, on August 18, 2014, the Debtors granted a second mortgage on their residence to Todd Stein's father, Donald Stein, in return for a $90,000 line of credit, which was

6

used in whole or in part to fund fraudulent transfers, including payments to or for the benefit of the Debtors' children.  As a result, rather than being able to use equity in the Debtors' real estate to make payments to creditors, the Trustee must resort to filing suit to attempt to recover such transfers from the children or the educational institutions.

### C. Inaccurate and Incomplete Disclosures by Debtors

22.     When the Debtors filed their bankruptcy Schedules and Statement of Financial Affairs, they failed to disclose various assets and transfers, and provided inaccurate information regarding their personal and business affairs.

23.     Some of these failures and misstatements did not necessarily involve large sums of money, but are nonetheless telling.  For example, Debtors took cash withdrawals from their deposit account soon before filing, on March 12, 2015, March 24, 2015, and March 25, 2015 in the amounts of $500, $550, and $450 respectively, but could not provide any explanation regarding what they did with this money, even though it was withdrawn within days (or in one case hours) of their bankruptcy filing, in which their Schedules disclosed only $100 cash on the Petition Date.

24.     Other misstatements regarding Debtors' personal finances were more significant. For example, Debtors' Statement of Financial Affairs reports that Todd Stein had gross income in 2013 of $83,500, which was plainly inconsistent with the $142,000 shown by a 2013 financial statement given by Todd Stein.  Upon questioning at the 2004 Exam, Todd Stein admitted that the information on the Statement of Financial Affairs was simply wrong.  With respect to Schedule I, the Debtors ignored the requirement of Line 8(a) to provide a "statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income."  Despite numerous amendments to their Schedules, Debtors have

7

never provided the required information, stating only an estimated aggregate income of $6,000. The omission is not insignificant because Todd Stein's income is based on the income from businesses; he does not receive regular wages.

25. There are numerous failures to disclose transfers and other information relating to the Debtors' businesses, including the following:

26. Debtors failed to disclose transfers by Todd Stein of the one percent interests in Southpark and Country Club in their Statement of Financial Affairs. Instead, Debtors identified only a transfer by Todd Stein of the one percent interest in Raiders for the sum of $1,500, as reflected in the responses to Question 10 of the Statement of Financial Affairs. [Doc 16, p. 32.] In reality, as noted the transfer of the one percent interest in Raiders was for $500. Furthermore, notwithstanding amendments filed on April 14, 2016, April 18, 2016 and May 3, 2016, Debtors have never accurately disclosed the transfers of the interests in Southpark and Country Club in their Statement of Financial Affairs. [Doc 117, p. 4; 123, p. 4 ; 127, p. 6.]

27. The Debtors' original, first amended and second amended Schedule B incorrectly reflect that Paige owns a 51 percent interest in TK Commercial when in fact Paige and Stein had "50/50" ownership at all times, something only corrected by a third amendment filed on May 3, 2016.

28. The initial Schedule B filed by the Debtors, and the Amended Schedule B filed on April 14, 2006 both failed to disclose Todd Stein's percentage ownership in CTS (100%) and more importantly, gave the misleading impression that the entity merely owns real estate that was the subject of foreclosure actions. [Doc 16, p. 5; 127, p. 2.]  In reality, however, CTS also owns 35 percent of 254 Properties, LLC ("254 Properties"), which Debtors only belatedly disclosed in their subsequent Amended Schedule A/B filed on May 3, 2016. [Doc 126, p. 1.]  At

8

the 2004 Exam, Todd Stein revealed that 254 Properties owns unencumbered real estate at 185 Morton Avenue, Martinsville, Indiana which was purchased for $800,000 and is now being sold on contract for $1 million.

### D. Other Transfers of Assets

29. On January 1, 2014, Todd Stein transferred all of his 7.5 percent ownership interest in Stein Family Partnership, LP (the "Family Partnership") to his children for no consideration. The Family Partnership owns commercial real estate in Plainfield, Indiana. At his 2004 Exam, Todd Stein testified that he transferred his interest in the Family Partnership for "[e]state planning purposes, because it was at its lowest value at the time. And also with negotiations with creditors, I didn't want them [presumably his children] to get caught up in anything."

30. At the same time in January 2014, Todd Stein also transferred to his three children a 16.5 percent interest in LT Holdings, LLC ("LT Holdings"), a company that owns real estate in Lafayette, Indiana. When asked in the 2004 Exam why he made the transfer, Todd Stein again testified that "it was for estate planning purposes, part of it was to not get caught up in anything bad that might have happened . . . ." Debtors did not receive anything in exchange for the transfer of Todd Stein's interest in LT Holdings.

31. Again for no consideration, Todd Stein also transferred his ownership interest in 254 Properties by simply amending the operating agreement to provide that JSZ Stein, LLC would own 65 percent of 254 Properties and CTS Services would own only a 35 percent interest. JSZ Stein is owned by Debtors' children. 254 Properties was previously solely owned by CTS, of which Todd Stein is sole owner. The transfer was plainly made for the purpose of avoiding payment to creditors.

9

32. Debtors' Statement of Financial Affairs disclosed that in January 2015, Debtors paid $36,400 to Georgia Tech and $4,000 to Purdue University. [Doc 16, p. 30.] After further questioning by the Trustee, however, regarding documentation for the payments, the Debtors disclosed that the payment identified in the Statement of Financial Affairs as made to Purdue was actually paid to a sorority, and the funds were paid from an account in the name of 6080 Michigan, LLC ("6080 Michigan"). 6080 Michigan is owned by Todd Stein's children, and the company acquired commercial property located at 6080 Michigan Road, Indianapolis, Indiana in June 2014. Debtors have not corrected their Statement Financial Affairs to reflect the correct facts.

33. As for the $36,400 paid to Georgia Tech in January 2015, shortly before the bankruptcy filing, after extensive inquiry by the Trustee regarding the source of funds, Debtors belatedly disclosed that a substantial portion of the amount was paid by credit card.

### E. Inadequate Recordkeeping and/or Falsification of Records

34. During the 2004 Exam, the Trustee's counsel questioned Todd Stein regarding various operating agreements produced to the Trustee. These operating agreements were transmitted through counsel in electronic form (PDF). The Trustee's counsel noted inconsistencies in the documents produced, including with respect to the operating agreement for Southpark that the document when opened reflected that it was for "Franklin Gables, LLC." When the document was printed, however, the identifying information for the particular entity did not print, making blanks appear in the printed form whereas text appeared in the electronic form.

35. Upon initial questioning, Todd Stein denied in his 2004 Exam that he used a computer to prepare the operating agreements. When the Trustee's counsel questioned Todd

10

Stein regarding the fact that the signatures for the TK Commercial operating agreement and the Franklin Gables operating agreement appeared identical, Todd Stein acknowledged that they did in fact appear to be identical and admitted that it was "possible" he simply pasted one signature page onto another.

36. In light of the issues regarding the identical signatures on two operating agreements and the inconsistencies between the electronic image versus the printed document for at least one of the operating agreements produced by Debtors, the Trustee's counsel requested to personally inspect the hard copies of corporate records and the electronic files of corporate records at the offices of Raiders. Debtors complied with the request, and on August 18, 2016, the Trustee's counsel inspected printed documents and electronic documents produced by Todd Stein at Raider's office.

37. The operating agreements produced by Todd Stein for Country Club, Southpark and Franklin Gables appear to contain the signatures for Todd Stein and Paige reproduced from the operating agreement for TK Commercial, with only the names and the dates changed or simply blocked out. In addition, as noted, the operating agreement represented to be the agreement for Southpark contains the name "Franklin Gables" in the body of the document.

38. The electronic files of the aforementioned documents reside on Todd Stein's computer in PDF. The electronic files denote a "Date modified" of February 11, 2016, just five days before they were produced to the Trustee's counsel and American Founders Bank's counsel. Todd Stein was unable to produce any other electronic versions of the documents, suggesting that the only documents in existence are those produced to the Trustee's counsel, whether in electronic or paper form.

11

39. Thus, on information and belief, the available evidence after repeated efforts to learn the facts regarding the Debtors' business affairs leads to a reasonable inference that the documents were either first prepared or substantively modified after the Petition Date and immediately prior to being produced to the Trustee. Alternatively, any earlier documents and electronically stored information were lost or destroyed prior to inspection.

40. The Trustee's investigation is continuing and may reveal additional facts in support of the Trustee's objection to discharge. In addition, creditor American Founders Bank filed a *Complaint to Determine Indebtedness Non-Dischargeable or, Alternatively, to Deny Discharge* on September 8, 2016, Adversary Proceeding No. 16-50284. To the extent that the creditor has articulated additional facts supporting a denial of Debtors' discharge, the Trustee incorporates those factual allegations in support of this Complaint.

## COUNT I

### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2))

41. For Count I of his Complaint against the Debtors, the Trustee incorporates the allegations contained in the preceding paragraphs 1 through 40 and further states as follows:

42. The Trustee has the power to request a denial of discharge pursuant to section 727(c)(1) of the Bankruptcy Code.

43. Section 727(a)(2) provides that the Court shall deny a discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

44. Inference of actual intent to defraud creditors may be drawn from extrinsic evidence of debtor's actions and the court may deduce fraudulent intent from all facts and circumstances of the case. *In re White*, 63 B.R. 742 (Bankr. N.D. Ill. 1986). A debtor giving away property while insolvent, without paying creditors, is indicative of actual fraudulent intent. *Id.*

45. Within one year before the filing of their petition, Debtors transferred or concealed or permitted to be transferred or concealed with actual intent to hinder, delay, or defraud their creditors and/or the Trustee, the various assets described herein, including, but not limited to, with respect to Todd Stein, the transfers of the one percent interests in Raiders, Country Club and Southpark, the transfers of interests in Stein Partnership and LT Holdings, and with respect to both Debtors, the transfers to Georgia Tech and payment of other education and living expenses for Debtors' adult children.

46. In addition, upon information and belief, as the primary source of support for the Debtors' adult children, Debtors may have made additional avoidable transfers to or for the benefit of their adult children for college tuition, living expenses and other support within one year prior to the Petition Date that do not appear on the Debtors' Statement of Financial Affairs.

**WHEREFORE,** the Trustee respectfully requests that the Court enter judgment denying the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(2) and grant the Trustee all other just and proper relief.

## COUNT II

**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3) and (5))**

47. For Count II of his Complaint against the Debtors, the Trustee incorporates the allegations contained in the preceding paragraphs 1 through 40, and 42, and further states as follows:

48. Section 727(a)(3) of the Bankruptcy Code provides that the Court shall deny a discharge if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

49. Section 727(a)(5) of the Bankruptcy Code provides that the Court shall deny a discharge if the debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities.

50. In the present case, with respect to Todd Stein, as noted, despite having extensive experience performing management and accounting functions for businesses that own, operate, buy and sell real estate, Todd Stein failed to maintain adequate organizational and business records, and lost, destroyed, mutilated, or falsified organizational or other business records from which his financial condition or business transactions might be ascertained.

51. In addition, at the 2004 Exam, Todd Stein could not provide a satisfactory explanation of how he had received distributions from Raiders in 2013 in the amount of $211,048, which greatly exceeded his gross income as reported on Debtors' Statement of Financial Affairs and in his personal financial statement. Likewise, as noted, Todd Stein could

14

not explain the disparity between his 2013 gross income as reported on Debtors' Statement of Financial Affairs and his personal financial statement.

52.    As previously noted, the Debtors were unable to explain or account for the prepetition withdrawals of cash from their deposit account.

**WHEREFORE,** the Trustee respectfully requests that the Court enter judgment denying the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(3) and (5) and grant the Trustee all other just and proper relief.

## COUNT III

### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4))

53.    For Count III of his Complaint against the Debtors, the Trustee incorporates the allegations contained in the preceding paragraphs 1 through 40, and 42, and further states as follows:

54.    Section 7272(a)(4) of the Bankruptcy Code provides that the Court shall deny discharge if the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

55.    Debtors are under an obligation to make full disclosure in connection with their bankruptcy case. *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 496 (7th Cir.2007) (quoting In re Mascolo, 505 F.2d 274, 278 (1st Cir. 1974)).  Courts have held a debtor "may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or

15

falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).

56.     The Debtors have made materially false statements and omitted material information in their Schedules and Statement of Financial Affairs.  They have required the Trustee and at least one interested creditor to make repeated follow-up requests for information and explanation after providing partially responsive information rather than voluntarily providing all material information that would enable the Trustee to efficiently administer this bankruptcy estate without undue expense and delay.

**WHEREFORE,** the Trustee respectfully requests that the Court enter judgment denying the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(4) and grant the Trustee all other just and proper relief.

Respectfully submitted,

RUBIN & LEVIN, P.C.
Attorneys for Elliott D. Levin, Trustee


By:  /s/ *James E. Rossow Jr.*
    James E. Rossow Jr., Atty No. 21063-29
    John M. Rogers, Atty No. 6182-49


RUBIN & LEVIN, P.C.
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
(317) 860-2893
FAX (317) 453-8619
Email: jim@rubin-levin.net
       johnr@rubin-levin.net